FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 28, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOISES D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:17-CV-03187-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 13. Attorney Nicholas David Jordan represents Moises D. (Plaintiff); Special Assistant United States Attorney Danielle R. Mroczek represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES** Defendant's Motion for Summary Judgment; **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on March 24, 2014, Tr. 71, alleging disability since July

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

23, 2008, Tr. 156, due to hernias in his lower back and a surgery on the left side of his back. Tr. 346. The application was denied initially and upon reconsideration. Tr. 95-97, 101-106. Administrative Law Judge (ALJ) Kimberly Boyce held a hearing on January 7, 2016 and heard testimony from Plaintiff and vocational expert Paul Prachyl. Tr. 49-70. The ALJ issued an unfavorable decision on March 2, 2016. Tr. 29-40. The Appeals Council denied review on September 5, 2017. Tr. 1-8. The ALJ's March 2, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 26, 2017. ECF Nos. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 42 years old at the alleged date of onset. Tr. 156. He reported that the highest level of education he completed was the sixth grade. Tr. 347. He completed training for his commercial driver's license in 2013. *Id*. His reported work history includes the jobs of agricultural laborer and agricultural truck driver/machine operator. *Id*. Plaintiff reported that he stopped working on July 23, 2008 due to his conditions. Tr. 346.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 2, 2016, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity between the alleged onset date of July 23, 2008 and the date last insured of December 31, 2013. Tr. 31.

At step two, the ALJ determined Plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the lumbar spine with history of fusion and residual L5 radiculopathy on the left side with foot drop and obesity. Tr. 31.

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 32.

At step four, the ALJ assessed Plaintiff's residual function capacity through the date last insured and determined he could perform a range of light work with the following limitations:

> The claimant could never climb ladders, ropes, or scaffolds, and he could not work at unprotected heights, or with or in proximity to hazards. He could occasionally climb ramps and stairs, and he could frequently balance, but he is limited to occasional stooping, kneeling, crouching, and crawling. He was able to perform work in which concentrated exposure to vibration was not present.

Tr. 32. The ALJ identified Plaintiff's past relevant work as farm machine operator and general farm worker and concluded that Plaintiff was not able to perform this past relevant work through the date last insured. Tr. 38.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform through the date last insured, including the jobs of small products assembler, housekeeper/cleaner, dye loader, and final

assembler. Tr. 38-39. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date of July 23, 2008 through the date last insured of December 31, 2013. Tr. 39.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical source opinions, (2) failing to properly address Plaintiff's symptom statements, and (3) failing to make a proper step five determination.

**DISCUSSION[1]**

**1. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Larry Lefors, D.O., Anjan Sen, M.D., and Daniel Brzusek, D.O. ECF No. 12 at 9-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**A.     Larry Lefors, D.O.**

Dr. Lefors saw Plaintiff 27 times from August 2010 through November of 2012. Tr. 826-903. Beginning on September 3, 2010, Dr. Lefors stated that Plaintiff had the following limitations: "Limited time on feet, work on level surfaces, sit stand move around if needed, limited walking." Tr. 899. He repeated these limitations at the end of his treatment report for the next 25 visits. Tr. 827, 831, 834, 836, 840, 842-43, 845, 848, 851, 854, 856, 859, 862, 865, 867, 869, 871,

1 | 874, 878, 881, 883, 886, 889, 891, 894.  On September 28, 2010, Dr. Lefors added
2 | an addendum to Plaintiff's file with a subject line of "Voc consult," and stated the
3 | following:

> We discussed his condition and limitations.  He will not be able to do things on uneven surfaces, no ladders, steps ect. [*sic*.]  Bending lifting squatting will be limited because of the foot drop and maintaining balance.  Work hardening reported noted increasing symptoms as the program continued.  He will need something that is primarily sitting.

Tr. 896.

The ALJ gave the opinions that Plaintiff's limitations included "[l]imited time on feet, work on level surfaces, sit stand move around if needed, limited walking," "little weight, as Dr. Lefors did not change these limitations over the course of two years, despite noting improvement at the time with the claimant's physical findings.  (Exhibit 23F)."  Tr. 35.  She did not discuss the opinion expressed on the September 28, 2010 addendum.  *Id*.

Neither party asserts which standard the ALJ was required to meet in rejecting Dr. Lefors' opinions.  ECF No. 12 at 9-11, 13 at 8-9.  However, which standard applies is immaterial as the Court finds that the ALJ's reason for rejecting Dr. Lefors' opinions does not meet the standard of specific and legitimate and is not supported by substantial evidence.

The ALJ's conclusion that Dr. Lefors noted improvement in Plaintiff's physical findings over the course of two years is not specific and legitimate and is not supported by substantial evidence.  First, the ALJ supported her general conclusion that the physical findings improved with a citation to a 78 page exhibit.  Tr. 35 *citing* Exhibit 23F (Exhibit 23F is Tr. 826-903).  This lacks the specificity addressed in *Embrey*.  849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

Second, the ALJ's assertion that Dr. Lefors' records showed that the physical findings improved is not supported by substantial evidence. At the September 3, 2010 appointment, when Dr. Lefors first included the limitations in his reports, the evaluation revealed poor QROM spine with hypertonus and tenderness to palpation, decreased strength in the left leg, toe, and heel, difficulty heal toe walking, deep tendon reflexes in the left ankle of ½ to 1, and left foot drop. Tr. 898. The physical findings were identical on September 30, 2010 and October 25, 2010. Tr. 891, 894. On November 23, 2010, the musculoskeletal findings were "[u]nchanged" and the Neurological findings continued to show the decreased strength on the left, difficulty heel toe walking, and reduced deep tendon reflexes. Tr. 888. Dr. Lefors noted that "[i]mprovement will be difficult to obtain." *Id*. On December 16, 2010, the physical findings are the same, and Dr. Lefors stated that "[h]is objective findings and functional abilities are unchanged. Improvement will be difficult to obtain." Tr. 885. On January 18, 2011, the musculoskeletal findings were listed as "[e]ssentially the same" and the neurological findings are listed as "[u]nchanged." Tr. 883. Dr. Lefors stated that Plaintiff's "objective findings are unchanged." *Id*. This statement was repeated again on February 15, 2011 and March 29, 2011. Tr. 877, 880. On April 26, 2011, Dr. Lefors' findings included poor QROM spine with hypertonus and tenderness to palpation, decreased strength in the left leg, toe, and heel, difficulty heel toe walking, and ½ to 1 deep tendon reflexes on the left. Tr. 874. He stated that Plaintiff's "objective findings and functional abilities are essentially the same." *Id*. This statement was repeated on May 3, 2011 and May 31, 2011. Tr. 869, 871. On June 27, 2011, Dr. Lefors stated that Plaintiff had started a work hardening program, but the musculoskeletal and neurological findings stated there was no change. Tr. 867. By July 28, 2011, Dr. Lefors stated that "[t]here has been no substantial change in his objective findings." Tr. 865. On September 19, 2011, almost one year since the functional limitations were first opined, the

musculoskeletal findings were "[e]ssentially the same" and the neurological findings were the same. Tr. 862. Again on November 3, 2011, Dr. Lefors stated "[t]here has been no substantial change in his objective findings." Tr. 859. Dr. Lefors consistently stated that there had been no change in the objective findings on November 29, 2011, January 10, 2012, February 14, 2012, and March 15, 2012. Tr. 848, 851, 854, 856. By April 26, 2012 Dr. Lefors again found that the objective findings were unchanged, but also stated that "improvement is not anticipated." Tr. 845. This is repeated on May 22, 2012, July 23, 2012, and August 14, 2012. Tr. 836, 839, 842. By September 11, 2012, nearly two years from the functional limitations first being opined, Dr. Lefors stated again that the functional findings remained unchanged, but also that there was an increase in symptoms. Tr. 833. This was repeated on October 8, 2012 and November 6, 2012. Tr. 827, 830. Essentially, Dr. Lefors saw Plaintiff once a month for over two years and the physical findings remained the same while Plaintiff experienced an increase in symptoms. Therefore, the ALJ's assertion that Dr. Lefors noted improvement in Plaintiff's physical findings is not supported by the record.

This case is to be remanded for the ALJ to properly address the opinions of Dr. Lefors, including the more detailed opinion expressed in the September 28, 2010 addendum.

**B.    Anjan Sen, M.D.**

On March 31, 2010, Dr. Sen completed an Insurer Activity Prescription Form stating that Plaintiff could sit frequently, stand/walk occasionally, climb ladders/stairs, twist, bend/stoop seldom, squat/kneel, never crawl, frequently reach and work above his shoulders occasionally, keyboard, wrist flexion/extension, grasp, and fine manipulation constantly, operate foot controls on the left seldom, exposure to high impact vibratory tasks occasionally, and exposure to low impact vibratory tasks frequently. Tr. 570. He was limited to lifting and carrying twenty-five pounds occasionally and ten pounds frequently. *Id*. Pushing and pulling was

limited to fifty pounds occasionally and twenty-five pounds frequently. *Id*. He indicated Plaintiff may perform modified duty work once he had received the appropriate brace. *Id*.

The ALJ gave the opinion "great weight in terms of the lifting and sitting limitations." Tr. 36. She gave "less weight to his opinion regarding standing/walking limitations" for two reasons: (1) the treatment records showed improvement in strength in Plaintiff's lower extremities and (2) the residual functional capacity determination should represent the most a person can do. *Id*.

Once again, the parties fail to allege which standard applies to the ALJ's reasons for rejecting the opinion. ECF No. 12 at 11-12, 13 at 9-10. However, the Court finds the applicable standard immaterial as the ALJ's reasons were either not supported by substantial evidence or failed to meet the lesser standard of specific and legitimate.

The ALJ's first reason for rejecting Dr. Sen's opinion regarding standing and walking, that treatment records demonstrated an improvement in the strength of the lower extremities, is not supported by substantial evidence. The ALJ supported her conclusion by citing the October 21, 2010 letter from Dr. Brzusek to Dr. Lefors. Tr. 36 (citing Tr. 573-74). The ALJ summarized the objective findings as "the claimant had full strength, intact reflexes, negative straight-leg raising, normal sensation, with left foot drop and weakness, and no evidence of an assistive device." *Id*. However a review of the cited evidence fails to show how this demonstrates an improvement in the strength of Plaintiff's lower extremities. All of the normal results and negative testing listed by the ALJ were a part of the lumbar examination, and not the lower extremity examination. Tr. 573-74. Following an exam of the left lower extremity, Dr. Brzusek stated that Plaintiff "had obvious weakness in the leg with foot drop. He has a very altered gait due to weakness in the left foot with a flat foot." Tr. 574. An electrodiagnostic study of the left lower extremity showed "Chronic findings of positive waves and

fibrillation potentials, decreased recruitment patter in the muscles of the L5 enervation in the left lower extremity." *Id*. He diagnosed Plaintiff with "residual radiculopathy with significant weakness" of the left lower extremity. *Id*. Furthermore, he stated that "It will be a challenge to get him back to any type of competitive employing given his history, educational background, work experience, etc." *Id*. Therefore, the ALJ's assertion that this letter demonstrated an increase in strength in Plaintiff's left lower extremity is not supported by the record.

The ALJ's second reason for rejecting Dr. Sen's walking and standing limitations, that the residual functional capacity is the most a claimant can perform, is not specific and legitimate. The ALJ stated that she "adopted the high end of the standing/walking range as the residual functional capacity is meant to reflect the most that the claimant can do." Tr. 36. Dr. Sen limited Plaintiff to occasional standing/walking, which is defined on the form as 11% to 33% or 1 to 3 hours in a work day. Tr. 570. The residual functional capacity determination by the ALJ found Plaintiff capable of light work, Tr. 32, which the regulations define as follows:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b). The Agency has further stated that "the full range of light work requires standing or walking, or and on, for a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10. In her decision, the ALJ failed to reconcile one to three hours of walking and standing with "a good deal of walking or standing," or "approximately 6 hours of an 8-hour workday." Therefore, this

reason fails to meet the specific and legitimate standard.

Defendant argues that this error is harmless because, accepting the vocational expert's testimony, the ALJ found that with a limitation to sedentary work further limited by nonexertional factors, Claimant nevertheless retained the residual functional capacity to perform some jobs. ECF No. 13 at 9-10. However, the ALJ's residual functional capacity determination failed to account for the seldom use of foot controls on the left, the preclusion from crawling, and the seldom twisting, bending, stooping, squatting, and kneeling. Tr. 32, 570. Therefore, there were nonexertional limitations addressed in Dr. Sen's opinion that the ALJ failed to address in the residual functional capacity determination and failed to provide an explanation as to why she did not include such limitation. Social Security Ruling (S.S.R.) 96-8p states that the residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Without such an explanation, the ALJ erred in the treatment of the opinion regardless of the alternative testimony by the vocational expert regarding an exertional limitation to sedentary work.

Upon remand the ALJ will readdress Dr. Sen's opinion in full.

### C. Daniel Brzusek, D.O.

As discussed above, Dr. Brzusek wrote a letter to Dr. Lefors on October 21, 2010 summarizing his evaluation of Plaintiff and providing recommendations. Tr. 571-74. In the letter, Dr. Brzusek stated "It will be a challenge to get him back to any type of competitive employing given his history, educational background, work experience, etc." Tr. 574. The ALJ's decision includes citations to the October 21, 2010 letter, but it does not discuss Dr. Brzusek's impression that Plaintiff would have difficulty returning to any competitive employment. Tr. 29-40.

Defendant argues that the ALJ considered the evidence from Dr. Brzusek as shown by the ALJ citing the letter when summarizing the medical evidence and when discussing Dr. Sen's opinion, and that since Dr. Brzusek did not set forth specific functional limitations, the ALJ was not required to address the opinion. ECF No. 13 at 10 (citing Tr. 34, 36). As discussed above, the ALJ misstated Dr. Brzusek's objective findings when she referenced the letter in regards to Dr. Sen's opinion. Therefore, upon remand, the ALJ will properly address the letter and discuss Dr. Brzusek's statement regarding Plaintiff's challenges to competitive employment.

### 2. Plaintiff's Symptom Statements

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject his symptom statements. ECF No. 12 at 7-9.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary.

### 3. Step Five

Plaintiff argues that the ALJ failed to properly determine his residual functional capacity; therefore, presenting an incomplete hypothetical to the

vocational expert and failing to meet her burden at step five. ECF No. 12 at 12-14.

This case is being remanded for the ALJ to address the medical opinions of Dr. Lefors, Dr. Sen, and Dr. Brzusek. Upon remand, the ALJ will readdress Plaintiff's residual functional capacity and make a new determination at steps four and five.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly address the medical opinions of Dr. Lefors, Dr. Sen, and Dr. Brzusek, to properly consider Plaintiff's symptom statements, and to make new determinations at steps four and five. Additionally, the ALJ will call a vocational expert to testify at a remand hearing.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED January 28, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE